UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

NAKIA EVANS,

                              Plaintiff,                      **MEMORANDUM & ORDER**
                                                             12-CV-5341 (MKB)

              v.

CITY OF NEW YORK, POLICE OFFICER
CAMERON EVELYN, POLICE OFFICER
MICHAEL GARGANO, SERGEANT DANIEL
CRAWFORD, and JOHN AND JANE DOE 1
THROUGH 3,

                              Defendants.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Nakia Evans commenced the above-captioned action against Defendants City of

New York, Police Officer Cameron Evelyn, Police Officer Michael Gargano, Sergeant Daniel

Crawford, and John and Jane Does 1–3, asserting claims of false arrest, malicious prosecution,

failure to intervene, supervisory liability and municipal liability pursuant to 42 U.S.C. § 1983.

(Compl., Docket Entry No. 1.)  Defendants moved for summary judgment seeking to dismiss all

of Plaintiffs' claims.  (Def. Mem. of Law in Support of Mot. for Summary Judgment ("Def.

Mem."), Docket Entry No. 24.)  The Court referred Defendants' motion for summary judgment

to Magistrate Judge Vera M. Scanlon for a report and recommendation.  (Order dated October 9,

2014.)  By report and recommendation dated February 24, 2015 ("R&R"), Judge Scanlon

recommended that the Court grant in part, and deny in part, Defendants' motion for summary

judgment.  (Docket Entry No. 32.)  Specifically, Judge Scanlon recommended that the Court

(1) dismiss Plaintiffs' false arrest, supervisory liability and *Monell* claims as to all Defendants, as

well as the malicious prosecution claim against Defendant Gargano, as withdrawn by Plaintiff;

(2) grant Defendants' motion as to the failure to intervene claim against Gargano, and the malicious prosecution claim based upon the charge of second degree assault against all Defendants, and (3) deny Defendants' motion as to the remaining malicious prosecution claim against Evelyn. (R&R 2–3.) On March 11, 2015, Defendants filed objections to Judge Scanlon's R&R. (Def. Obj., Docket Entry No. 34.) No other objections were filed. For the reasons set forth below, the Court adopts Judge Scanlon's R&R in its entirety.

## I. Background

The factual history of this action is set forth in detail in the R&R. The facts are repeated here as necessary to provide context for the Court's decision. Unless otherwise specified, the facts detailed below are not disputed by the parties.

### a. Events on February 11, 2011

Plaintiff is a former contractor for the Metropolitan Transit Authority's Access-a-Ride program. (Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1.) On or about the late afternoon of February 11, 2011, Plaintiff picked up a passenger, Donald Malcolm, at his home in Brooklyn, New York. (Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.) Plaintiff drove Malcolm to the intersection of Nostrand Avenue and Glenwood Road, where she became "'caught' inside the intersection, with a van directly in front of her and a UPS truck to the left side of her vehicle." (Def. 56.1 ¶¶ 3–4; Pl. 56.1 ¶¶ 3–4.) Plaintiff's vehicle was blocking traffic from proceeding through the intersection. (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.) Evelyn, a police officer with the New York City Police Department, was standing on the southwest corner sidewalk. (Def. 56.1 ¶ 6; Pl. 56.1. ¶ 6.) Upon observing Plaintiff's vehicle in the intersection, Evelyn directed Plaintiff, using hand gestures, to turn her vehicle onto Glenwood Road. (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.)

The parties dispute the events that occurred after Evelyn directed Plaintiff to turn her

2

vehicle onto Glenwood Road. Defendants contend that Plaintiff "failed to comply" with Evelyn's hand-gesture and verbal instructions to turn her vehicle onto Glenwood Road. (*Id*. ¶¶ 7–9.) Plaintiff contends that after Evelyn instructed her to "turn to the right or the left," she informed Evelyn that she was not able to follow his direction. (Pl. 56.1 ¶ 7.) According to Plaintiff's deposition testimony, there were vehicles on both sides of her vehicle. (Tr. of the Dep. of Nakia Evans ("Pl. Dep.") 52:15–53:8, excerpts annexed to the Decl. of Edward Friedman in Opp'n to Defs. Mot. for Summary Judgment ("Friedman Decl.") as Ex. I, Docket Entry No. 28.) Plaintiff contends that after she told Evelyn that she could not turn right or left, and while she was still in the intersection, Evelyn requested her license and registration. (Pl. 56.1 ¶ 8.) Evelyn asked her to move her vehicle to the side of the road after she gave him her license and registration. (*Id*.; Pl. Dep. 53:19–54:2.)

The parties agree that at some point Plaintiff moved her vehicle to the side of the road. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) According to Defendants, when Plaintiff was moving her vehicle, she hit Evelyn on the right hip and thigh with her vehicle. (Def. 56.1 ¶ 12; Tr. of the Dep. of Cameron Evelyn ("Evelyn Dep.") 38:13–17, excerpts annexed to the Decl. of Patrick Beath in Support of Defs. Mot. for Summary Judgment ("Beath Decl.") as Ex. C, Docket Entry No. 22.) Plaintiff claims that her vehicle never hit Evelyn. (Pl. 56.1 ¶ 12.) Plaintiff's passenger, Malcolm, did not observe Plaintiff's vehicle hit Evelyn but heard Evelyn say to Plaintiff, "You hit me with the vehicle, you hit me with the vehicle," after Plaintiff began to move her car. (Def. 56.1 ¶ 13; Tr. of the Dep. of Donald Malcolm ("Malcolm Dep."), excerpts annexed to the Beath Decl. as Ex. B.) According to Plaintiff, she first heard Evelyn's allegation that she hit him with her car when another officer arrived on the scene. (Pl. 56.1 ¶ 13.) Plaintiff claims that Evelyn was not limping or holding on to any object for support after he claimed to be hit by her car.

(*Id.*)

After Evelyn called for backup, another police officer, Defendant Gargano, appeared on the scene. (Def. 56.1 ¶¶ 14–15; Pl. 56.1 ¶¶ 14–15.) Evelyn told Gargano that Plaintiff blocked the intersection of Norstrand Avenue and Glenwood Road, failed to obey his instruction to turn her car out of the intersection, and hit him with his car. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.) Gargano arrested Plaintiff. (Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17.) Plaintiff claims that the arrest report identifies Crawford as the police officer who supervised Gargano in his arrest of Plaintiff and who "approved" Plaintiff's arrest.[1] (Pl. 56.1 ¶ 29.)

Evelyn was treated by emergency medical technicians on the scene and transported to Beth Israel Hospital where he was diagnosed with a contusion to his right leg. (Def. 56.1 ¶ 18; Pl. 56.1. ¶ 18.) Plaintiff contends that according to medical records from Beth Israel Medical Center, hospital staff did not observe any swelling, bleeding or bruising to Evelyn's leg. (Pl. 56.1 ¶ 37.) Evelyn received follow-up care for his leg, and was out of work on "line of duty leave" from February 11, 2011 until April 1, 2011. (Def. 56.1 ¶ 18.)

### b. Criminal prosecution of Plaintiff

On February 12, 2011, based on a criminal court information sworn to by Evelyn, Plaintiff was arraigned on the charges of (1) assault in the second degree, N.Y. Penal Law § 120.05(3); (2) assault in the third degree, N.Y. Penal Law § 120.00(1); (3) obstructing governmental administration in the second degree, N.Y. Penal Law § 195.05; (4) disorderly conduct, N.Y. Penal Law § 240.20(5); (5) reckless driving, N.Y. Veh. & Traf. Law § 1212;

---

[1] Defendants argue that there is "no evidence whatsoever suggesting that . . . Crawford had any involvement in [P]laintiff's allegedly malicious prosecution." (Def. 56.1 ¶ 29.) As discussed *infra* footnote 3, Plaintiff has withdrawn her malicious prosecution claim against Crawford.

(6) obedience to police officers and flagpersons, N.Y. Veh. & Traf. Law § 1102 (hereinafter, "disobedience to a police officer"); and (7) obstructing traffic at an intersection, N.Y. Veh. & Traf. Law § 1175.  (Def. 56.1 ¶¶ 21–22; Pl. 56.1. ¶¶ 21−22.)  Plaintiff pled not guilty to all of the charges.  (Def. 56.1 ¶ 22; Pl. 56.1. ¶ 22.)

On June 13, 2011, upon the motion of the District Attorney made "out of mercy," the charge of assault in the second degree was dismissed.[2]  (Def. 56.1 ¶ 23, Pl. 56.1 ¶ 23.)  On September 30, 2011, Evelyn swore to a superseding information adding charges of attempted assault in the third degree, N.Y. Penal Law §§ 110, 120, and reckless endangerment in the second degree, N.Y. Penal Law § 120.20.  (Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24.)  The prosecutor later dismissed the charge of attempted assault in the third degree.  (Def. 56.1 ¶ 26; Pl. 56.1 ¶ 26.)

On April 19, 2012, Plaintiff was tried before a jury on the charges of assault in the third degree, obstructing governmental administration in the second degree, reckless endangerment in the second degree, disorderly conduct, reckless driving, disobedience to a police officer, and obstructing traffic at an intersection.  (Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.)  After a five-day trial, on April 26, 2012, the jury convicted Plaintiff of disobedience to a police officer and obstructing traffic at an intersection, and acquitted her on all of the remaining charges.  (Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.)

According to Plaintiff, she was forced to make a total of eighteen court appearances while her case was pending.  (Pl. 56.1 ¶ 30.)  The District Attorney never offered her a plea agreement that required her to plead guilty to anything other than a misdemeanor.  (*Id.* ¶ 36.)  As a result of the criminal charges that accused her of striking Evelyn with her vehicle, she was

---

[2]  The District Attorney moved to dismiss the charge of assault in the second degree out of consideration of the fact that Plaintiff had no previous arrests.  (Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23.)

terminated from her job and was unable to obtain other employment.  (Pl. 56.1 ¶¶ 33–34.)

## II.  Discussion

### a.  Standards of review

#### i.  Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review.  28 U.S.C. § 636(b)(1)(C); *see also Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2.  The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments.  *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." (citations omitted)); *Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *see also DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, 558 Fed. App'x. 89, 89 (2d Cir. 2014); *Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Unopposed recommendations

Three of Judge Scanlon's recommendations were unopposed: that the Court (1) dismiss, as withdrawn by Plaintiff, the false arrest, supervisory liability and *Monell* claims, as well as the malicious prosecution claim asserted against Gargano;[3] (2) grant Defendants' motion for

---

[3] In her opposition to Defendants' motion for summary judgment, Plaintiff confirms that she "agreed to a dismissal of the false arrest claims, concedes her *Monell* claim against the City of New York and all claims against Crawford." (Mem. of Law in Opp'n to Defs. Mot. to Dismiss ("Pl. Opp'n") 1, Docket Entry No. 29.) Plaintiff further agreed to withdraw her

summary judgment as to Plaintiff's malicious prosecution claim based on the "mercy" dismissal of the second degree assault charge;[4] and (3) grant Defendants' motion for summary judgment as to the failure to intervene claim asserted against Defendant Gargano.[5]  The Court has reviewed the unopposed R&R and, finding no clear error, the Court adopts the recommendations as to these issues pursuant to 28 U.S.C. § 636(b)(1).

Having dismissed these claims, the only remaining claim in this action is a malicious prosecution claim against Evelyn based on charges of obstructing governmental administration,

---

malicious prosecution claim against Gargano.  (Pl. Opp'n 21 (stating that "[P]laintiff offers no opposition to the dismissal of all claims against . . . Gargano for malicious prosecution because there is no evidence that [he] initiated the prosecution against [P]laintiff".)  The Court notes that Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment is incorrectly titled as a memorandum of law in opposition to Defendants' motion to dismiss.

[4]  Because the second degree assault charge was dismissed "out of mercy," this charge did not terminate in Plaintiff's favor, and Plaintiff therefore could not satisfy the elements of a malicious prosecution claim.  *See Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (finding that dismissal of a charge by a prosecutor "out of mercy" does not satisfy favorable termination element); *see also infra* note 6 (discussing elements of a malicious prosecution claim).

[5]  Although Plaintiff withdrew her malicious prosecution claim against Gargano in her opposition to Defendants' motion for summary judgment, (Pl. Opp'n 21), she nevertheless maintained her failure to intervene claim against Gargano, (*id*. at 20–21).  Judge Scanlon recommends the dismissal of this claim because the record demonstrates that Gargano's only involvement in the prosecution of Plaintiff was in arresting her following a report from Evelyn that Plaintiff hit him with her car.  Because Gargano's arrest was based on a report from Evelyn, and there is nothing in the record to suggest that Gargano had reason to doubt Evelyn's account of the events, Gargano had probable cause to arrest Plaintiff, defeating a failure to intervene claim.  *See DiStefano v. Sedita*, No. 11-CV-1125, 2014 WL 349251, at *4 (E.D.N.Y. Jan. 31, 2014) ("'A law enforcement official has probable cause to arrest if he received this information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.'" (quoting *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012))); *Boley v. Durets*, No. 12-CV-4090, 2013 WL 6562445, at *4 (E.D.N.Y. Dec. 10, 2013) ("A report of a crime by a complaining witness can establish probable cause for an arrest 'absent circumstances that raise doubts as to the victim's veracity.'" (citing *Singer v. Fulton Cnty. Sherriff*, 63 F.3d 110, 119 (2d Cir. 1995))).

disorderly conduct, reckless driving, assault in the third degree, attempted assault in the third degree, and reckless endangerment brought against Plaintiff.

### c. Defendants' objections

Defendants object to the portions of the R&R that denied their motion for summary judgment as to Plaintiff's remaining malicious prosecution claim against Evelyn. (Def. Obj.) Defendants contend that this claim should be dismissed because Plaintiff did not suffer a constitutionally cognizable deprivation of liberty, and fails to meet her burden to show a lack of probable cause. (*Id.* at 6–23.) Defendants also argue that Evelyn is entitled to qualified immunity on the malicious prosecution claim. (*Id.* at 23–25.) The Court considers each of these arguments below.

### i. Constitutionally cognizable deprivation of liberty

Judge Scanlon concluded that Plaintiff suffered a constitutionally cognizable deprivation of liberty as a result of the eighteen court appearances she was required to make within a fourteen-month period in connection with the underlying criminal action.[6] (R&R 75.) Defendants argued in their motion for summary judgment that Plaintiff could not rely on these

---

[6] To state a malicious prosecution claim under New York law, a plaintiff must show "(1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) instituting of the proceedings with actual malice." *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013) (citing *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003)). In addition, "to be actionable under [S]ection 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Id.* at 112 (citing *Jocks*, 316 F.3d at 136). Here, the parties do not dispute that Evelyn commenced a criminal proceeding against Plaintiff. In addition, Defendants have not objected to the portions of the R&R which found that the underlying criminal charges against Plaintiff for assault in the third degree, reckless endangerment, obstructing governmental administration in the second degree, disorderly conduct and reckless driving terminated in her favor, and that there is a genuine issue of fact as to whether those charges were instituted with malice. (R&R 13–57, 72–76.) The Court, having reviewed the R&R on these issues, finds no clear error and adopts the portions of the R&R finding that these elements of Plaintiff's malicious prosecution claim are satisfied.

9

court appearances in demonstrating a liberty restriction because Plaintiff could not show that they were specifically caused by her prosecution on the charges that terminated in her favor, as opposed to the traffic infractions (obstructing an intersection and disobeying a police officer) for which she was convicted. (Def. Mem. 8–10.) Judge Scanlon rejected this argument, finding that the Second Circuit in *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989), specifically envisioned a successful malicious prosecution claim based on these circumstances when it indicated that malicious prosecution claims are "particularly appropriate to prevent a police officer from unjustifiably 'forc[ing] an accused to go to trial on [a] misdemeanor when he otherwise would plead to the violation.'" (R&R 75 (quoting *Janetka*, 892 F.2d at 190) (alterations in R&R).) Therefore, Judge Scanlon concluded that Defendants' argument to the contrary should be rejected. (*Id.* ("Perhaps obviously, the Defendants are not entitled to summary judgment by pointing to an aspect of this action's record which mirrors the Second Circuit's description of a particularly meritorious malicious prosecution fact pattern."))

In their objections to the R&R, Defendants contend that Judge Scanlon's reliance on *Janetka* is misplaced as that opinion was concerned "only" with what constitutes favorable termination in a malicious prosecution action, and not with what is sufficient to show a constitutionally cognizable liberty deprivation. (Def. Obj. 11.) Moreover, Defendants argue, *Janetka* was decided five years before the Supreme Court's opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), and two years before the Second Circuit's opinion in *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1991), which held, respectively, that malicious prosecution claims arise under the Fourth Amendment, and that a plaintiff must show a deprivation of liberty guaranteed by the Fourth Amendment to sustain a malicious prosecution claim. (Def. Obj. 7, 11.) Defendants reiterate their argument that Plaintiff cannot rely on the court appearances in the

criminal action to show a liberty deprivation "[b]ecause each of plaintiff's court appearances was supported by probable cause to prosecute for at least the offenses" for which she was convicted. (*Id*. at 12.) Thus, Defendants argue, without evidence of any other deprivation of liberty "attributable solely to the prosecution" of the charges which were terminated in Plaintiff's favor, her malicious prosecution claim must be dismissed. (*Id*.) The Court disagrees with Defendants' argument.

To succeed on a Section 1983 malicious prosecution claim, a plaintiff must establish a deprivation of liberty in violation of the Fourth Amendment, meaning a deprivation of liberty "consistent with the concept of 'seizure.'" *Singer*, 63 F.3d at 116. In *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013), the Second Circuit stated that "a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." *Swartz*, 704 F.3d at 112 (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) and *Jocks v. Tarvernier*, 316 F.3d 128, 136 (2d Cir. 1997)). Accordingly, courts have found the deprivation of liberty element satisfied particularly where a criminal defendant was required to attend several post-arraignment court appearances, and/or where, as in New York, a defendant's release on his own recognizance requires the defendant to "render himself at all times amenable to the orders and processes of the court," N.Y. Crim. Proc. Law § 510.40, thereby ordinarily requiring that the defendant remain in the state.[7] *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215–16 (2d Cir. 2000) (finding that

---

[7] New York Criminal Procedure Law section 510.40 provides in relevant part that "[u]pon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself at all times amenable to the orders and processes of the court." N.Y. Crim. Proc. Law § 510.40(2). The Second Circuit and some district courts have interpreted this section as requiring a defendant to "ordinarily remain in the state," and accordingly, have held that a

the plaintiff sufficiently demonstrated a liberty deprivation where he was required to make five court appearances and because he was released of his own recognizance, he was required to "render himself at all times amenable to the orders and processes of the court"); *see Swartz*, 704 F.3d at 112 (finding the liberty deprivation element satisfied where defendant commenced a criminal action rendering plaintiff "at all times subject to the orders of the court . . . and foreseeably required him to incur . . . perhaps [the] expense of multiple court appearances"); *Gierlinger v. Town of Brant*, No. 13-CV-370, 2015 WL 269131, at *5 (W.D.N.Y. Jan. 21, 2015) (finding deprivation of liberty element satisfied where plaintiff was forced to attend ten court appearances including two days of trial); *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 389 (E.D.N.Y. 2013) (finding that multiple court appearances during a twenty-month period from arrest to acquittal satisfies liberty deprivation element); *Perez v. Duran*, 962 F. Supp. 2d 533, 541 (S.D.N.Y. 2013) (finding a deprivation of liberty where plaintiff was both compelled to appear in court and evidence supports an inference that travel restrictions were imposed when the plaintiff was released on his own recognizance).

---

plaintiff may base a malicious prosecution action on such travel restrictions, particularly where the restrictions are accompanied by mandatory court appearances. *See Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (finding that five court appearances and travel restriction, as part of release on recognizance, are sufficient to show liberty deprivation); *Perez v. Duran*, 962 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) (finding that travel restrictions were "necessarily required" as part of the plaintiff's release on his own recognizance and that such restrictions in addition to two mandatory court appearances constituted a liberty deprivation); *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, at * (E.D.N.Y. Sept. 2, 2009) ("The Second Circuit has stated that a defendant who was released of his own recognizance but required to make several court appearances and prevented by statute from leaving the state sufficiently alleged a deprivation of liberty." (citing *Rohman*, 215 F.3d 216)); *Genia v. N.Y.S. Troopers*, No. 03-CV-870, 2007 WL 869594, at *18 (E.D.N.Y. 2007) ("[E]ven where there was no explicit order restricting out-of-state travel, appearing in court on five occasions, combined with the requirement to be amenable to orders of the court, in essence requires a defendant to 'ordinarily' remain in the state, and therefore, such conditions are sufficient to constitute a deprivation of liberty under the Fourth Amendment.").

Against this legal backdrop, the Court agrees with Judge Scanlon's conclusion, and finds that Plaintiff has demonstrated a liberty deprivation. First, Plaintiff's allegation that she was required, as a post-arraignment defendant, to make eighteen court appearances is sufficient to demonstrate a liberty deprivation. *See Swartz*, 704 F.3d at 112 (A post-arraignment defendant who is "obligated to appear in court in connection with [criminal] charges . . . suffers a Fourth Amendment deprivation of liberty.") Second, because Plaintiff was released on her own recognizance, (Criminal Court Arraignment Sheet, annexed to Beath Decl. as Ex. J), she was required to "render [herself] at all times amenable to the orders and processes of the court," a requirement that necessarily imposed travel restrictions. These restrictions are sufficient to demonstrate a liberty deprivation.[8] *See Perez*, 962 F. Supp. 2d at 541 (required court

---

[8] The Court notes, as other district courts within the Second Circuit have, that the case law is unclear as to what extent and under which circumstances, mandatory court appearances constitute a deprivation of liberty under Section 1983. *See Oxman v. Davis*, 999 F. Supp. 2d 404, 413 (E.D.N.Y. Feb. 14, 2014) (observing that "case law from [the Second] Circuit is somewhat unclear with respect to the approach courts should take when considering" the deprivation of liberty element); *Kennedy v. City of New York*, 11-CV-1451, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013) (describing the case law on deprivation of liberty as "hardly a seamless web"). In *Burg v. Gosselin*, the Second Circuit held that the "issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). In reaching this decision, the Second Circuit noted that while "the number of appearances may bear upon whether there was a seizure[,] . . . it is hard to see how multiple appearances required by a court, or for the convenience of the person answering the summons, can be attributed to the conduct of the officer who issues it." *Id.* In *Swartz v. Insogna*, the Second Circuit deemed this observation in *Burg* "questionable" dictum "unless the multiple appearances were for the arrestee's convenience," and declined to apply it in the context of "a plaintiff who was required to appear in court in connection with criminal proceedings initiated by the defendant police officer." *Swartz*, 704 F.3d at 112. However, in *Faruki v. City of New York*, a summary order issued after *Swartz*, the Second Circuit, relying on *Burg*, dismissed a malicious prosecution claim for failure to show a deprivation of liberty, because the proceedings "placed no restriction on her other than a requirement that she appear in court on two occasions." *Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013) (citing *Burg*, 591 F.3d at 101).

Some courts have reconciled *Swartz* and *Burg* to mean that while "the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not

appearances and travel restrictions imposed when plaintiff was released on his own recognizance constitute a deprivation of liberty); *Naim v. City of New York*, No. 10-CV-912, 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) (holding the plaintiff "demonstrated sufficient post-arraignment liberty restraints" for the purposes of his malicious prosecution claim by claiming that he was required to appear in court following his arraignment and because he was released on his own recognizance, under New York law, "he was necessarily subject to travel restrictions").

Contrary to Defendants' argument, the fact that Plaintiff was ultimately convicted of the traffic violations does not warrant a different conclusion. At the very least, Defendants'

---

constitute a Fourth Amendment seizure, [as indicated in *Burg*], the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure," as held in *Swartz*. *MacPherson v. Town of Southampton*, No. 07-CV-3497, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2013); *Gierlinger v. Town of Brant*, 13-CV-370, 2015 WL 269131, at *5 (W.D.N.Y. Jan. 21, 2015) (same). *Compare Peterec v. City of New York*, No. 14-CV-309, 2015 WL 1027367, at *5 (S.D.N.Y. Mar. 6, 2015) (finding no liberty deprivation where the plaintiff was issued a "'pre-arraignment, non-felony summons' that required a single court appearance and contained no additional restrictions on his liberty") *with Willis v. City of New York*, No. 12-CV-5259, 2015 WL 556884, at *8 n.9 (S.D.N.Y. Feb. 9, 2015) (acknowledging that the plaintiff's two court appearances, post-arraignment, did constitute a liberty deprivation under *Swartz*). Moreover, some courts have continued to follow the line of cases holding a "single court appearance, as an alleged deprivation of liberty, is insufficient to support a Section 1983 malicious prosecution claim." *Gem Fin. Serv. Inc. v. City of New York*, No. 13-CV-1686, 2014 WL 1010408, at *9 (E.D.N.Y Mar. 17, 2014) (collecting cases). While the boundaries of when a required court appearance rises to the level of a seizure are unclear, the Court notes that as Plaintiff was arraigned, released on her own recognizance and, therefore, was subjected "at all times . . . to the orders and processes of the court," N.Y. Crim. Proc. Law § 510.40(2), and also subjected to eighteen court appearances, this case falls within all of the varying interpretations of a liberty deprivation. *See Perez v. Duran*, 962 F. Supp. 2d 533, 541−42 (S.D.N.Y. 2013) (comparing cases that find liberty deprivation element satisfied by either restrictions on travel or compulsion to attend court proceedings with those that have required both travel restrictions and mandatory court appearances and noting that, "It is not necessary to determine whether [deprivation of liberty] requires both travel restrictions and court appearances . . . because it is uncontested that the plaintiff was compelled to appear in court in connection with the criminal proceedings . . . and the evidence supports an inference that travel restrictions were imposed when the plaintiff was released on his own recognizance" and thus subject to N.Y. Crim. Proc. Law § 510.401.).

argument that Plaintiff must show that the court appearances were a result of the charges that terminated in her favor, as opposed to the "justified" traffic infraction charges for which she was convicted, (Def. Obj. 8), implicates a question of fact that the Court may not resolve on a motion for summary judgment. *Cf. Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013) (holding that the plaintiff's release on his own recognizance "alone raise[d] a triable issue as to whether [the] [p]laintiff suffered a post-arraignment deprivation of liberty"); *Sassower v. City of White Plains*, 992 F. Supp. 652, 656 (S.D.N.Y. 1998) (finding that the plaintiff raised genuine issues of fact on deprivation of liberty element by claiming that the underlying prosecution required three court appearances which caused her to "cut short" a planned trip out of state and denying the defendant's motion for summary judgment). Considering that the charges for which Plaintiff was convicted — namely, disobedience to a police officer and obstructing traffic at an intersection — are traffic infractions, and the charges for which she was acquitted are misdemeanors or violations, the Court rejects Defendants' suggestion that Plaintiff cannot, as a matter of law, show that any of the court appearances were *caused* by the charges for which she was acquitted. The charges that Plaintiff was convicted of are traffic infractions that carry a maximum jail term of fifteen days. *See* N.Y. Veh. & Traf. Law § 1800.00(b). Conversely, with the exception of the charge for disorderly conduct, which is a violation and carries a maximum jail time of fifteen days, N.Y. Penal Law § 70.15(3), the other charges against Plaintiff — obstructing governmental administration, disorderly conduct, reckless driving, assault in the third degree, attempted assault in the third degree and reckless endangerment — are all misdemeanors. *See* N.Y. Penal Law § 195.05 ("Obstructing governmental administration is a Class A misdemeanor); N.Y. Penal Law § 240.20 ("Disorderly conduct is a violation."); N.Y. Veh. & Traf. Law § 1212 (Reckless driving is a misdemeanor.); N.Y. Penal Law § 120.00 ("Assault in

15

the third degree is a class A misdemeanor."); N.Y. Penal Law § 110.05 (classifying attempts to commit misdemeanors as Class B misdemeanors); N.Y. Penal Law § 120.20 ("Reckless endangerment in the second degree is a class A misdemeanor."). A sentence of up to one year can be imposed for convictions of misdemeanors. N.Y. Penal Law § 10.00(4). Construing the facts in favor of Plaintiff, a reasonable jury could find that Plaintiff's eighteen court appearances, including a five-day jury trial, were the result of the misdemeanor charges for which she was ultimately acquitted, and not the traffic infractions for which she was convicted.[9] The Court finds that there is an issue of fact as to whether Plaintiff sustained a deprivation of liberty.

### ii. Probable cause

Defendants also object to Judge Scanlon's probable cause determination. (Def. Obj. 13−23.) In the R&R, Judge Scanlon concluded that there is a genuine issue of material fact as to whether Evelyn had probable cause to prosecute Plaintiff for the charges which terminated in her favor — namely, (1) obstructing governmental administration, (2) disorderly conduct, (3) reckless driving, (4) assault in the third degree, (5) attempted assault in the third degree, and (6) reckless endangerment. (R&R 59–65.) Defendants object to Judge Scanlon's conclusion, arguing, first, that Plaintiff's conviction for obstructing traffic in an intersection and disobedience to a police officer establishes, "as a matter of law," that Evelyn had probable cause to prosecute Plaintiff for obstructing governmental administration, disorderly conduct and reckless driving, and second, that "no reasonable jury" could believe that Evelyn lacked probable

---

[9] At a minimum, the jury could infer that a five-day jury trial would not have occurred had Plaintiff not also been charged with the acquitted conduct. *See People v. Foy*, 88 N.Y.2d 742, 745 (1996) ("[O]ffenses carrying sentences of less than six months are 'petty offenses,' to which no right to a jury trial attaches."); *People v. Harris*, 828 N.Y.S.2d 832, 838−39 (City Ct. 2006) (no jury trial for driving while ability impaired offense).

cause to charge Plaintiff for assault in the third degree, attempted assault in the third degree and reckless endangerment.[10]  (Def. Obj 14.)  The Court considers the evidence as to each of these charges below and finds, in accordance with the R&R, that there are genuine disputes of material facts implicating whether Evelyn had probable cause to bring any of these charges against Plaintiff.

Because probable cause is a complete bar to a claim of malicious prosecution, Plaintiff must show a "lack of probable cause" in order to sustain this claim.  *See Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)); *Husbands v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009); *DiStefano v. Sedita*, No. 11-CV-1125, 2014 WL 349251, at *9 (E.D.N.Y. Jan. 31, 2014).  "'Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested.'"  *Thompson v. City of*

---

[10] Defendants also argue that Judge Scanlon "improperly shifted the burden to [D]efendants to demonstrate that each charge was supported by probable cause." (Def. Obj. 13.) In her discussion of the probable cause element as it relates to the underlying charge against Plaintiff for obstructing governmental administration, Judge Scanlon notes that in order for probable cause to have existed for this charge, "Officer Evelyn needed to have reason to believe that Plaintiff's disobedience [of a police officer] was accompanied by physical interference," however Judge Scanlon found, "such reason is not shown in the record." (R&R 64–65.) Judge Scanlon further noted that "it is Defendants' burden to show the existence of probable cause." (R&R 65.) According to Defendants, "this error casts a shadow over Magistrate Judge Scanlon's entire probable cause analysis." (*Id.*) The Court agrees with Defendant that Plaintiff bears the burden of establishing the elements of her malicious prosecution claim in order to recover on this claim, including the burden of demonstrating a lack of probable cause. However, the Court does not interpret Judge Scanlon's reference to Defendants' burden as "improperly shift[ing]" this burden to Defendants. A careful reading of the R&R suggests that Judge Scanlon was referring to Defendants' burden as the *movant* on the instant motion. Indeed, summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

*New York*, 592 F. App'x 36, 37 (2d Cir. 2015) (quoting *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004)).

### 1. Obstructing governmental administration

In support of their motion for summary judgment, Defendants argued that Plaintiff's underlying conviction for disobeying a police officer demonstrates that Evelyn had probable cause to prosecute Plaintiff for obstructing governmental administration.  Judge Scanlon did not find Defendants' argument persuasive in light of the fact that the elements of an obstructing governmental administration charge are different from the elements of a disobedience to a police officer charge.  (R&R 62.)  Defendants object to Judge Scanlon's finding, arguing that Evelyn had probable cause to prosecute Plaintiff for obstructing governmental administration because, Plaintiff "prevented [Evelyn] from performing his official function of clearing the intersection" by independent unlawful acts which Plaintiff does not dispute — that is, obstructing an intersection and disobeying a police officer.  (Def. Obj. 16.)  The Court finds Defendants' argument unpersuasive and agrees with Judge Scanlon's reasoning and conclusion.

A person is guilty of obstructing governmental administration when, among other things, "he intentionally obstructs, impairs, or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."  N.Y. Penal Law § 195.05.  As Judge Scanlon noted, disobeying a police officer is not the same as obstructing governmental administration.  This is, in part, because obstructing governmental administration "requires *physical* interference with police action." *Hilderbrandt v. City of New York*, No. 13-CV-1955, 2014 WL 4536736, at *3 (E.D.N.Y. Sept. 11, 2014); *see also Hilderbrandt*, 2014 WL 4536736, at *4 ("Failing to obey a police order, in

itself, will not satisfy the requirements of" an obstructing governmental administration charge.) Defendants contend that Plaintiff did "physically interfere [with] Officer Evelyn's attempt to clear the roadway by remaining in the roadway." (Def. Obj. 16.) Assuming "remaining in the roadway" satisfies the physical interference requirement of an obstructing governmental administration charge, Defendants' argument improperly assumes the truth of facts that are disputed by Plaintiff. Plaintiff does not concede that she *remained* in the roadway to block Evelyn's attempts to clear the intersection. Rather, Plaintiff alleges that after she was "caught" in the intersection, and when she told Evelyn that she could not proceed as he directed, *Evelyn approached her in the intersection,* demanding her license and registration. (Pl. 56.1 ¶ 8.) She moved her car after Evelyn obtained her license and registration and directed her to the side of the road. (*Id.*; Pl. Dep. 53:19–54:2.) Construing these facts in the light most favorable to Plaintiff, a jury could find that Evelyn did not have probable cause to believe that Plaintiff was obstructing governmental administration. Plaintiff denies that she remained in the intersection, obstructing Evelyn's efforts. Thus, accepting Plaintiff's version of the facts, there was no physical interference as required to support the obstructing governmental administration charge. Although these facts may be sufficient — indeed the jury believed that they were — to support the obstructing an intersection and disobedience of police officer charges, they do not show as a matter of law that Plaintiff physically interfered with any official action by Evelyn. Because there is a dispute of fact as to whether Evelyn had reason to believe that Plaintiff "physically interfered" with his efforts, summary judgment is not warranted on this issue. *See Dowling v. City of New York*, No. 11-CV-4954, 2013 WL 5502867, at *6 (E.D.N.Y. Sept. 30, 2013) (denying summary judgment on whether there was probable cause for obstructing governmental administration charge because "[k]ey questions of fact to be resolved in th[e] [case] include

whether [the] [p]laintiff placed himself physically in between the police . . . and whether [p]laintiff remained calm or became disorderly enough to interfere with police action").

## 2. Disorderly conduct

According to Defendants, because the jury found "beyond a reasonable doubt" that Plaintiff blocked traffic at an intersection, by virtue of Plaintiff's conviction for obstructing an intersection, Evelyn necessarily had probable cause to prosecute Plaintiff for "creating a risk [by] obstruct[ing] vehicular . . . traffic" because such an action constitutes disorderly conduct. (Def. Mem. 12.) Judge Scanlon disagreed, finding that while Plaintiff's conviction for obstructing an intersection may establish that she engaged in certain conduct, it does not establish the *mens rea* or the "public harm" elements of a disorderly conduct charge — that is, it does not demonstrate that Plaintiff acted intentionally or recklessly to cause public inconvenience, annoyance or alarm. (R&R 65–69.) Defendants object to Judge Scanlon's reasoning for two reasons. First, Defendants argue that Plaintiff's conviction for obstructing an intersection establishes, "at a minimum," that Plaintiff "recklessly disregarded the risk that she would block the intersection causing public annoyance." (Def. Obj. 18.) Second, Defendants claim that even if they cannot establish that Plaintiff acted with the requisite *mens rea*, they are still entitled to summary judgment because "it is well settled in the Second Circuit that an officer is 'not required to make a full investigation into plaintiff's state of mind prior to taking action.'" (*Id.*)

"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[] . . . he [*inter alia*] obstructs vehicular or pedestrian traffic." N.Y. Penal Law § 240.20. The Second Circuit has held "that probable cause for a disorderly conduct violation under N.Y. Penal Law [section] 240.20 exists only where a reasonable person in the officer's circumstances would have believed

that the person to be arrested acted 'with intent to cause public inconvenience, annoyance or alarm or with recklessness as to a risk thereof.'" *McClellan v. City of Rensselaer*, 395 F. App'x 717, 718 (2d Cir. 2010) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001)) (internal quotation marks omitted).

The Court rejects Defendants' argument that Plaintiff's conviction of obstructing an intersection establishes that she was "reckless" in blocking the intersection, or that she engaged in the type of public harm proscribed by the disorderly conduct statute. As Judge Scanlon noted, the elements of a disorderly conduct charge are different from the elements of a charge for obstructing an intersection. Among the distinctions are the *mens rea* and public harm requirements. A charge of obstructing an intersection simply does not require intentional or reckless conduct. *Compare* N.Y. Veh. & Traf. Law § 1175 ("When vehicular traffic is stopped on the opposite side of an intersection, no person shall drive a vehicle into such intersection, except when making a turn unless there is adequate space on the opposite side of the intersection to accommodate the vehicle . . . .") *with* N.Y. Penal Law § 24.20 ("A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof he [*inter alia*] obstructs vehicular or pedestrian traffic."). Thus, the conviction alone does not support a finding that, as a matter of law, Plaintiff's conduct was reckless or intentional, thereby constituting disorderly conduct. *See People v. Jones*, 848 N.Y.S. 2d 600, 602 (2007) (dismissing an information alleging disorderly conduct because there was no indication that the defendant "when he stood in the middle of the sidewalk . . . had the intent to or recklessly created a risk of causing 'public inconvenience, annoyance or alarm'").

In addition, the New York Court of Appeals has explained that "critical to a charge of disorderly conduct is a finding that defendant's . . . behavior w[as] of a public rather than an

individual dimension . . . . [t]his requirement stems from the mens rea component [of the charge]." *People v. Baker*, 960 N.Y.3d 354, 361 (2013). Thus, in determining whether a record "supports an inference that the requisite *mens rea* was present, [the court] ha[s] employed a contextual analysis that turns on consideration of many factors, including 'the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances.'" *Id*. at 360 (citing *People v. Weaver*, 16 N.Y.3d 123, 128 (2011)). Applying those factors here, the Court finds that many of them are in dispute and/or are unaddressed in the record. For example, while the parties agree that Plaintiff obstructed the intersection, there is no evidence in the record demonstrating whether, and to what extent, this amounted to a "disturbance" that attracted others, or the duration of the disturbance. *See Baker*, 20 N.Y.3d at 362 (finding no basis for probable cause for disorderly conduct charge where the defendant made "two abusive statements," that were clearly "extremely brief," and not accompanied by "menacing conduct"). Contrary to Defendants' argument, a disorderly conduct charge is intended to punish "only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic." *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (citing *People v. Pearl*, 321 N.Y.S.2d 986, 987 (App. Div. 1971)). The undisputed facts that Plaintiff was convicted for obstructing an intersection and disobeying a police officer fail to show more than an inconvenience to vehicular traffic, and therefore do not establish probable cause as a matter of law. *Cf. Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("As disorderly conduct is a lesser charge than resisting arrest and assaulting an officer . . . we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior.").

### 3. Reckless driving

In their motion for summary judgment, Defendants argued that Plaintiff's conviction for obstructing an intersection establishes that Evelyn had probable cause to believe that Plaintiff committed reckless driving as a matter of law. Judge Scanlon concluded that because the two offenses "do not align," Defendants are not entitled to summary judgment on these grounds. In their objections to the R&R, Defendants have reiterated their argument that by blocking the intersection, Plaintiff committed reckless driving. According to Defendants, by blocking an intersection, Plaintiff "unreasonably interfered with the free and proper use of the public highway." (Def. Obj. 19.) The Court finds otherwise.

Reckless driving means "driving or using any motor vehicle . . . in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway." N.Y. Veh. & Traf. Law § 1212. Reckless driving requires "evidence showing more than mere negligence." *People v. Goldblatt*, 950 N.Y.S.2d 210, 212–13 (App. Div. 2012) (quoting *People v. Grogan*, 260 N.Y. 138, 143 (1932)). In fact, "[d]etermining whether conduct rises to the level of unreasonable interference or endangerment such that it constitutes the requisite recklessness involves the presence of additional aggravating acts or circumstances beyond a single violation of a rule of the road." *Id.* at 213. Here, construing the facts in Plaintiff's favor, the record does not demonstrate, as a matter of law, that Plaintiff's conduct constituted anything other than "mere negligence" or a "single violation of a rule of the road." Thus, the Court finds that there is a genuine dispute as to whether Evelyn had probable cause to commence a reckless driving charge against Plaintiff.

### 4. Assault in the third degree, attempted assault in the third degree, reckless endangerment

Defendants base their probable cause argument for the remaining charges of assault in the

third degree, attempted assault in the third degree, and reckless endangerment, on the allegation that Plaintiff hit Evelyn with her car. (Def. Obj. 20–22 ("Based on the fact that [P]laintiff struck Officer Evelyn with her car, there was probable cause for . . . Evelyn to believe that [P]laintiff had committed the crimes of assault, attempted assault and reckless driving.")) Although Defendants admit that this is a disputed fact — Plaintiff contends that Evelyn fabricated this allegation — Defendants nevertheless argue that summary judgment is warranted because "no reasonable jury" could find that Evelyn was not hit by Plaintiff's car. (Def. Obj. 20.) The Court rejects this conclusory argument for the same reasons outlined by Judge Scanlon in the R&R, namely, that as exemplified by (1) dueling medical records as to whether Evelyn suffered an injury following the incident; (2) conflicting testimony between Plaintiff and Evelyn as to whether the "collision" occurred; and (3) testimony from Malcolm,[11] Plaintiff's passenger, which could be construed as helping either side, there is a genuine issue of material fact as to whether Plaintiff's vehicle hit Evelyn. Therefore, the Court denies summary judgment on this issue.

### iii.  Qualified immunity

Defendants claim that Evelyn is entitled to qualified immunity on the malicious prosecution claim because he had probable cause to bring the charges for obstructing governmental administration, disorderly conduct, reckless driving, assault in the third degree, assault in the third degree, and reckless endangerment. (Def. Obj. 24–25.) Because the Court finds that there is a genuine dispute of fact as to whether there was probable cause for these

---

[11]  Defendants argue that Malcolm's "speculation" that it was "impossible" for Plaintiff's vehicle to have struck Evelyn, based on the relative positions of the car and Evelyn, would not be admissible at trial. (Def. Obj. 21.) Even assuming this to be true, Malcolm's testimony about the positioning of the car relative to where Evelyn was standing and the direction of the car's movement would be admissible. A jury may infer from this testimony whether it is likely or not that Plaintiff struck Evelyn with her car.

charges, Evelyn is not entitled to qualified immunity. *See Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) ("Summary judgment on qualified immunity grounds is not appropriate where there are facts in dispute that are material to a determination of reasonableness [of probable cause determination]." (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999))); *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) ("Although the qualified immunity issue should be resolved at the earliest possible stage in litigation, summary judgment is not appropriate when there are material factual disputes." (internal citation and quotation marks omitted))).

### III. Conclusion

For the foregoing reasons, the Court adopts the R&R in its entirety. Defendants' motion for summary judgment as to the malicious prosecution claim as to Evelyn is denied.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  March 25, 2015
        Brooklyn, New York